PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | CASE NO. 1:20-CR-815 |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| MARIO JACKSON, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Resolving ECF No. 21] |
| | ) | |
| | ) | |

Pending is Defendant Mario Jackson's Motion to Suppress. ECF No. 21. The Government filed a response in opposition. ECF No. 22. Defendant filed a reply. ECF No. 23. The Court did not hold an evidentiary hearing, as none was requested and Defendant's Motion turns on questions of law. Having fully considered the record and relevant law, the Court denies Defendant's Motion.

**I. Background**

The parties present consistent factual narratives in their briefing. Early in the morning on October 15, 2020, Officer Ryan Tieber of the Broadview Heights Police was parked at a gas station. A Kia Sorento pulled up to the gas station, parked, and the driver—later identified as Defendant Mario Jackson—and a passenger briefly entered the gas station, then exited and drove away. Officer Tieber ran the Sorento's license plate through the Law Enforcement Automated Data System (LEADS) and found that the owner, Defendant, had an outstanding arrest warrant.

(1:20-CR-815)

He checked Defendant's Bureau of Motor Vehicles (BMV) image, and concluded it was the same man he had seen enter the gas station.

Officer Tieber then followed the Sorento out of the parking lot and initiated a traffic stop. He approached the vehicle, confirmed that the driver was Defendant, and asked him to step out of the vehicle. He noted that Defendant was extremely nervous. Officer Tieber contacted dispatch to confirm the validity of the outstanding arrest warrant shown on LEADS and, because of Defendant's demeanor and the fact that the outstanding arrest warrant was for a drug crime, also requested a K-9 unit. The K-9 unit arrived before confirmation of the warrant.

Once the K-9 unit had arrived, but before it began to search, Officer Tieber asked Defendant if there were any drugs in the vehicle, and Defendant responded that there were. Officer Tieber then asked the passenger to step out of the vehicle, and saw an open container of wine on the floorboard of the passenger seat. The officer then conducted a thorough search of the vehicle and found heroin, methamphetamine, and cocaine under the driver's seat; two firearms in the glove compartment; and a marijuana blunt.

## II. Discussion

The legal issues presented by Defendant's Motion can be divided into three categories. First, Defendant argues that Officer Tieber's stop of Defendant's vehicle was an unconstitutional seizure. ECF No. 21 at PageID #: 93–94. Second, Defendant argues that Officer Tieber unconstitutionally prolonged the stop. ECF No. 23 at PageID #: 110–111. Finally, Defendant argues that the officer's search of the vehicle was unconstitutional. ECF No. 21 at PageID #: 95–97. Because Defendant is wrong on all three arguments, his Motion is denied.

(1:20-CR-815)

**A. Stopping Defendant's Vehicle**

The Sixth Circuit has set forth clear standards that control the Court's analysis of whether it was constitutional for Officer Tieber to stop Defendant's vehicle in the instant circumstances:

> To justify stopping a car, an "officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." . . . Once an officer discovers that a car's owner has an outstanding arrest warrant, he needs only reasonable suspicion that the owner is in the vehicle. . . . It is fair to infer that the registered owner of a car is in the car absent information that defeats the inference.

*United States v. Pyles*, 904 F.3d 422, 424–25 (6th Cir. 2018) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)) (other citations omitted). Here, Officer Tieber had sufficient reasonable suspicion to stop Defendant's car even without any corroborating evidence that Defendant was in the car. The officer knew from his LEADS search that there was an outstanding arrest warrant for the registered owner of the vehicle, and it was fair for him to infer that the owner—*i.e.*, Defendant—was in the car.

Defendant's argument that Officer Tieber could not have seen Defendant well enough to match him to the BMV photo (ECF No. 21 at PageID #: 94) is unavailing because additional corroboration was unnecessary. The officer already had a reasonable suspicion that Defendant was the man in the car, so he did not need to be certain of the identification. It is enough that Officer Tieber's observation did not defeat his inference that Defendant was the man in the car. In fact, Officer Tieber's observation of Defendant supported, rather than defeated, the inference.

Defendant attempts to distinguish *Pyles* by arguing that because Officer Tieber had not yet contacted dispatch to confirm the warrant, he did not know with enough certainty that there was an outstanding warrant. ECF No. 23 at PageID #: 110. First, the officer in *Pyles* knew that

3

(1:20-CR-815)

there was an outstanding arrest warrant for the owner of the car stopped in that case the exact same way Officer Tieber knew there was an outstanding arrest warrant for the owner of Defendant's car here: he "ran its license plate number through the [state] law enforcement database." *Pyles*, 904 F.3d at 424. Additionally, even if the warrant had turned out to be invalid—LEADS is not infallible—this would not defeat Officer Tieber's reasonable suspicion based on the facts available to him from LEADS, because officers "are entitled to rely on the existence of a facially valid warrant." *Cunningham v. Reid*, 337 F. Supp. 2d 1064, 1073 (W.D. Tenn. 2004) (citing *Lauer v. Dahlberg*, 717 F. Supp. 612 (N.D. Ill. 1989) (holding that officer was entitled to rely on information received from LEADS despite having been presented with an uncertified copy of a warrant recall order), *aff'd*, 907 F.2d 152 (7th Cir. 1990)). Officer Tieber's stop of Defendant's car was supported by reasonable suspicion, and, therefore, constitutional.

### B. The Duration of the Stop

Next, Defendant argues that even if the initial stop was constitutional, Officer Tieber unconstitutionally prolonged it. ECF No. 23 at PageID #: 110–111. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). Additionally, an officer's "actions must have been 'reasonably related' to the purpose of the stop and not have unreasonably delayed the stop." *United States v. Bell*, 555 F.3d 535 (6th Cir. 2009) (quoting *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002)).

Defendant argues that Officer Tieber's action of contacting dispatch to confirm the validity of the warrant shown on LEADS was a means of unconstitutionally prolonging the stop.

4

(1:20-CR-815)

ECF No. 23 at PageID #: 111. It was not. The purpose of the stop was to execute the outstanding warrant for Defendant's arrest. Given that purpose, confirming the validity of the warrant was "'reasonably related' to the purpose of the stop." Bell, 555 F.3d at 535.

Nor did confirming the warrant's validity by contacting dispatch "unreasonably delay[] the stop." Id. Although, as explained above, a facially valid warrant is enough to provide reasonable suspicion for an investigative stop, it was nonetheless reasonable for Officer Tieber to double-check that the warrant was still valid before arresting Defendant. Courts confronted with analogous circumstances have held that additional investigation such as that undertaken by Officer Tieber did not unreasonably prolong an investigative stop. *See Gardner v. Village of Grand River, Ohio*, 955 F. Supp. 817, 826 (N.D. Ohio 1997) (holding that officers did not detain a driver for an unreasonable amount of time when they "detained [him] for only as long as it took for them to confirm that [he] was not in fact the person sought by the outstanding warrant"); *United States v. Hill*, 852 F.3d 377 (4th Cir. 2017) (holding that officers may determine whether a driver is the subject of outstanding warrants incident to a traffic stop). And the very strain of case law that allows an officer to arrest an individual without verifying the validity of a warrant (*see, e.g.*, Cunningham, F. Supp. 2d at 1073) demonstrates that sometimes LEADS incorrectly indicates that there is an active, outstanding warrant. Thus, Officer Tieber was arguably trying to protect Defendant's constitutional rights by verifying that the warrant was still valid before arresting him. This action was reasonably related to the purpose of the stop and did not unreasonably delay the stop.

(1:20-CR-815)

Additionally, because Officer Tieber was already reasonably waiting for dispatch to verify the warrant while he called in the K-9 unit, calling the K-9 unit also did not unreasonably prolong the stop. As in *Bell*, "[b]ecause [Office Tieber] already w[as] waiting for the results of [his attempt to verify the validity of the warrant], any time that [he] spent in pursuing other matters . . . even if those matters were unrelated to the original purpose of the stop, did not extend the length of the stop." 555 F.3d at 542. Because Officer Tieber did not unreasonably extend the length of the stop, his actions were not unconstitutional.

### C. Probable Cause to Search the Car

Finally, the search of the vehicle was constitutional because Officer Tieber had probable cause to believe that the vehicle contained contraband based on his interactions with Defendant during the stop. The Fourth Amendment to the Constitution prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. Although in general "a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant,"*Camara v. Municipal Court*, 387 U.S. 523, 528–29 (1967), there is a well-known exception for automobiles. "[A]n officer may perform a warrantless search of a detained vehicle should the officer have probable cause to believe the vehicle contains contraband or evidence of criminal activity." *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Haynes*, 301 F.3d 669, 678 (6th Cir. 2002).

Here, Defendant barely contests that Officer Tieber had probable cause to search his vehicle. *See* ECF No. 23 at PageID #: 111. Defendant's admission that there were drugs in the

6

(1:20-CR-815)

vehicle and the officer's observation of an open alcohol container in plain view were sufficient to establish probable cause.  See *Unites States v. Collazo*, 818 F.3d 247, 259–60 (6th Cir. 2016) (holding that a driver's admission of possessing illegal substances established probable cause); *United States v. Howton*, 260 F. App'x 813, 817 (6th Cir. 2008) (holding that an officer's observation of open alcohol containers in plain view established probable cause).  Because Officer Tieber had probable cause to search Defendant's vehicle, the search did not offend Defendant's Fourth Amendment rights.

### III. Conclusion

For the reasons explained above, Defendant's Motion is denied.


IT IS SO ORDERED.


| | |
|---|---|
| June 29, 2021 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |