PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARIO JACKSON, | ) | |
| | ) | CASE NO.  1:24-CV-01242 |
| Petitioner, | ) | 1:20-CR-00815 |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Respondent. | ) | **ORDER** |
| | ) | [Resolving ECF No. 98 and 100] |

Pending before the Court is *pro se* Petitioner Mario Jackson's Motion Under 28 U.S.C.

§ 2255 to Vacate, Set Aside or Correct Sentence (ECF No. 98) and Motion to Amend (ECF No.

100).[1]  The Government responded in opposition.  ECF No. 108.  Petitioner replied.  ECF No.

109.  The Court granted the motion to amend without objection.  The Court has been advised,

having reviewed the record, the parties' briefs, and the applicable law.  For the reasons stated

below, Petitioner's amended motion is denied.

### I.      Background

A grand jury returned a Second Superseding Indictment charging Petitioner with three

counts of possession with intent to distribute a controlled substance in violation of 18 U.S.C.

§§ 841(a)(1) and (b)(1)(C), one count of using or carrying a firearm during and in relation to a

drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), and one count of being a felon

---

[1] Unless otherwise indicated, the docket references will be to the criminal case, not
the related civil case, 1:20-CV-01242.

(1:24CV1242/1:20CR815)

in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and (e)(1).  *See* ECF No. 33.

After a petit jury found Petitioner guilty of being a felon in possession and acquitted him on the other charges, the Court sentenced Petitioner to 110 months of imprisonment followed by a three-year term of supervised release.  *See* Jury Verdict Forms, ECF No. 74 and Minutes of Proceedings [non-document] dated 07/19/2023.  *See also,* Crim. J., ECF No. 91.  Petitioner did not appeal his conviction or sentence.

Nearly one year later,[2] Petitioner filed a § 2255 petition claiming that he had received ineffective assistance of counsel.  *See* Mot. to Vacate, ECF No. 98.  Particularly, Petitioner contends that his counsel failed to file a direct appeal as instructed (ECF No. 98); and, in his Motion to Amend, Petitioner claims that his counsel failed to consult him about an appeal (ECF No. 100).

Because there were conflicting sworn statements about whether Petitioner's trial counsel was instructed to appeal, the Court held an evidentiary hearing.  *See Pola v. United States*, 778 F.3d 525, 535 (6th Cir. 2015) (holding that the defendant was entitled to an evidentiary hearing because his factual narrative was not "inherently incredible" and nothing on the record "conclusively show[ed]" counsel's performance was not deficient).  *See also* Order, ECF No. 110.

At the evidentiary hearing, Court addressed the Motion to Amend (ECF No. 100), and based on the prison mailbox rule, found the motion to be timely filed.  The Government raised

---

[2] The Supreme Court has found that a prisoner "files" on the date he delivers his filing to prison authorities for forwarding to the district court.  *Houston v. Lack*, 487 U.S. 266, 270 (1988).  This is referred to as the prison mailbox rule.  Moving forward, the Court will refer to the dates of Petitioner's filing based on this rule.

(1:24CV1242/1:20CR815)

no objections to the granting of the Motion to Amend which added Ground Two: Failure to

Consult about Appeal, to the Motion to Vacate (ECF No. 98).

## II.    Legal Standard

28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act
> of Congress claiming the right to be released upon the ground that
> the sentence was imposed in violation of the Constitution or laws of
> the United States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate,
> set aside or correct the sentence.

28 U.S.C. § 2255(a).  To prevail on a motion to vacate under § 2255, the movant must allege "(1)

an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an

error of fact or law that was so fundamental as to render the entire proceeding invalid."  *Mallett*

*v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268

F.3d 346, 351 (6th Cir. 2001)).

## III.    Discussion

Petitioner alleges two grounds of ineffective assistance of counsel.  A showing of

ineffective assistance of counsel requires the defendant to establish that (1) counsel's

performance was deficient, and (2) that deficient performance prejudiced the defense.  *Strickland*

*v. Washington*, 466 U.S. 668, 687 (1984).  The defendant must show that "counsel made errors

so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

Sixth Amendment."  *Id*.  This test applies to claims, like Petitioner's, that counsel was

constitutionally ineffective for failing to file a notice of appeal.  *Roe v. Flores-Ortega*, 528 U.S.

470, 477 (2000).

3

(1:24CV1242/1:20CR815)

While the judicial scrutiny of counsel's performance must be "highly deferential," the Supreme Court has long held that a lawyer who disregards "specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* Counsel's failure to file an appeal, in disregard of the defendant's request, is a *per se* violation of the Sixth Amendment regardless of whether the appeal would have been successful.  *See Campbell v. United States, 686 F.3d 353, 358 (6th Cir. 2012)* (citing *Ludwig v. United States, 162 F.3d 456, 459 (6th Cir. 1998)*).

The Sixth Circuit emphasizes that a defendant's actual request is a critical element of the Sixth Amendment analysis.  *Ludwig, 162 F.2d at 459.*  When a defendant neither instructs counsel to appeal, nor asks that an appeal not be taken, deficient performance is "best answered" by asking (1) did counsel in fact consult with the defendant about an appeal, and if counsel has not, then (2) whether counsel's failure to consult itself constitutes deficient performance.  *Flores-Ortega, 528 U.S. at 478*.

"*Flores-Ortega* sets forth a three-part sequential analysis.  First, we must determine whether the defendant gave counsel express instructions regarding an appeal.  Second, if we find that the defendant did not provide express instructions, then we must determine whether counsel consulted with the defendant about an appeal.  Finally, if there was no consultation, then we must decide whether the failure to consult was objectively unreasonable."  *Johnson v. United States, 364 F. App'x 972, 975–76 (6th Cir. 2010)*.

A. Requesting an Appeal[3]

---

[3] The Court uses the filing of an *appeal* or *notice of appeal* interchangeably, as does the parties.

4

(1:24CV1242/1:20CR815)

In his original motion, Petitioner attests that "before being taken away[,]" after his sentence had been imposed, he "demanded that Attorney Morse file a direct appeal."  *See* Mot. to Vacate, ECF No. 98 at PageID #: 644.  But the evidence contradicts Petitioner's attestation.  At the hearing, Petitioner testified differently.  While under oath, Petitioner testified that he did not recall that he "demanded" that Attorney Morse appeal.  *See* ECF No. 137 at PageID #: 1781.  Petitioner also testified that he "never saw [Attorney Morse]" after sentencing and agreed that he had never been visited by or had spoken with Attorney Morse after sentencing.  *See* ECF No. 137 at PageID #: 1724.  Attorney Morse's testimony corroborated Petitioner's.  In Attorney Morse's affidavit, under oath he declared that he has "no independent recollection of Mr. Jackson asking [him] to file an appeal."  *See* Aff. of Former Couns., ECF No. 108-1 at PageID #: 775.  *See* ECF No. 137 at PageID #: 1752.  Attorney Morse also testified that it was his habit to file an appeal when requested to do so.  ECF No. 137 at PageID #: 1754.

Despite Petitioner's claims of family members emailing or texting Attorney Morse to ask him to file a notice of appeal, he presented no evidence—documentary or testimonial—showing that Attorney Morse was sent or received a message requesting that he file an appeal for Petitioner.  ECF No. 100 at PageID ##: 660–61.  *See* ECF No. 137 at PageID ##: 1725, 1729–30.  Attorney Morse also testified that he did not recall receiving any texts or emails from Petitioner's family members.  *See* ECF No. 137 at PageID #: 1753.

Petitioner also testified that he asked Officer Kordic, an officer at the detention center where Petitioner was held post-trial, to relay a message to Attorney Morse that Petitioner wanted to meet about filing an appeal; and that it was Petitioner's belief that Officer Kordic relayed that message to Attorney Morse.  *See* ECF No. 137 at PageID #: 1720.  Officer Kordic, however, did not recall it that way.  He testified that he did not have a clear recollection of whether the

(1:24CV1242/1:20CR815)

message Petitioner asked him to deliver was about meeting with Attorney Morse or asking Attorney Morse to file an appeal.  ECF No. 137 at PageID ##: 1736–37.  Either way, Officer Kordic does not recall whether he relayed any message to Attorney Morse.[4]  *See* ECF No. 137 at PageID ##: 1736, 1737.  To this end, Attorney Morse testified that he does not remember speaking with Officer Kordic about Petitioner's request to meet or to file an appeal.  *See* ECF No. 137 PageID ##: 1753, 1759–60.

Considering the evidence and lack thereof, the Court finds that Defendant did not ask Attorney Morse to file an appeal after Petitioner's had been sentenced, and that Attorney Morse did not receive a message (*via* text or email) or any other express request to file an appeal on behalf of Petitioner.  Therefore, the Court finds by a preponderance of the evidence that Petitioner did not request that Attorney Morse file a notice of appeal after he had been sentenced.

B.  Failure to Consult

Because the Court finds that Petitioner did not request that Attorney Morse file an appeal after he had been sentenced, the Court must consider whether counsel was constitutionally obligated to consult Petitioner about an appeal.  As the Supreme Court acknowledged, "[w]e cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient.  Such a holding would be inconsistent with both our decision in *Strickland* and common sense."  *Flores-Ortega*, 528 U.S. at 479 (relying on *Strickland*'s guidance "rejecting mechanistic rules governing what counsel must do") (emphasis in original) (internal citation omitted).

---

[4] When Officer Kordic searched his records of meetings detainees and attorneys had at the detention center, he also could not find any record of Petitioner and Attorney Morse meeting after late October 2022.  *See* Def.'s Ex. H, ECF No. 138-2 *and* ECF No. 137 at PageID #: 1740.

6

(1:24CV1242/1:20CR815)

That said, counsel would have a duty to consult with his client about an appeal, if counsel knew or should have known "(1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.  In answering the questions below, the Court must consider "all the information counsel knew or should have known." *Id.*

1.  *Would a Rational Petitioner Want to Appeal?*

When considering whether Attorney Morris should have known that Petitioner would want to appeal, the Court considers "all the circumstances." *Id.* at 478 (citing *Strickland*'s holding that "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances").

After considering a conditional plea agreement that would have required Petitioner to plead guilty to all five counts, Petitioner rejected the plea agreement and went to trial.  As indicated earlier, he was acquitted of four counts and found guilty of only one charge—being a felon in possession of a firearm.  Despite his lengthy criminal history, Petitioner avoided an enhanced sentence and a mandatory five-year consecutive term of incarceration.  Ultimately, by downwards variance, the Court imposed a sentence less than recommended by the advisory sentencing guidelines and that Petitioner would have faced had he entered the proposed plea agreement.[5]  *See* Crim. J., ECF No. 91.  Against this backdrop, it is reasonable to conclude that a

---

[5] The plea agreement forecast an advisory guidelines range of 117–131 months. *See* Tr. of Scheduled Change of Plea Procs., ECF No. 119 at PageID #: 828.  Additionally, as discussed during sentencing, the Court did not apply a change in law, which raised the maximum penalty for a felon in possession charge from ten years to fifteen years, even though this increased penalty was enacted before the jury had been empaneled.  *See* Tr. of Sent'g Procs., ECF No. 107 at PageID #: 741 (noting this may be "good fodder for an appellate court argument").

7

(1:24CV1242/1:20CR815)

rational defendant would not have appealed, given his satisfaction with the outcome of trial and sentence imposed. At sentencing, Jackson acknowledged appreciation for the legal services and advice of his counsel. *See* Tr. of Sent'g Proc., ECF No. 107 at PageID #: 751. He made no indications to Attorney Morse or the Court of his inclination to file an appeal, even when the Court explained his appellate rights. ECF No. 107 at PageID ##: 750–51. *See also* ECF No. 137 at PageID ##: 1727–29 .

Accordingly, the Court finds that Petitioner has not shown that a rational defendant in his circumstances would have wanted to appeal.

   *2. Did Petitioner Reasonably Demonstrate Interest in Appealing?*

Petitioner considered a written plea agreement that would have reserved his appellate rights to appeal the Court's denial of his motion to suppress. *See* Def.'s Ex. G, ECF No. 138-1 (reserving Petitioner's right to appeal denial of motion to suppress and pleading guilty to all five counts). But Petitioner changed his mind before the change-of-plea hearing and proceeded to trial. *See* Tr. of Scheduled Change of Plea Procs., ECF No. 119. This matters because the annotated plea agreement the defense submitted as an exhibit has Petitioner's initials on each page, including the page on which he would have reserved his appellate rights, and his signature at the end of the document. This corroborates Petitioner's and Attorney Morse's testimony that they had discussed the plea agreement and Petitioner was aware of his appellate rights. While under oath, Attorney Morse emphasized that he "negotiated the [plea] at length for the inclusion of that reservation of right[s]" because "both" he and Petitioner wanted it. *See* ECF No. 137 at PageID #: 1757.

Therefore, it is reasonable for the Court to believe Petitioner had more than a rudimentary understanding of his appellate rights, even before the Court gave them at the conclusion of

(1:24CV1242/1:20CR815)

sentencing. *See* *McCormick v. United States*, 72 F.4th 130, 134–35 (6th Cir. 2023) (holding that counsel need not repeat information that the defendant already received and therefore it is not "controlling" that the consultation happened *before* sentencing rather than after). *See also* ECF No. 137 at PageID ##: 1727–29 (acknowledging that Petitioner received and understood his appellate rights, including his right to new counsel, and that he had a history of communicating with the Court).

Petitioner also acknowledged that he met with counsel at least twice after trial and before sentencing.[6]  Minimally, those meetings provided Petitioner with additional opportunities to speak with Attorney Morse about his appellate intentions.  Officer Kordic also made it clear that detainees, like Petitioner, could request meetings with their counsel.  There is no evidence in the record of Petitioner scheduling such a meeting.  Rather, at best, Petitioner attempted to do no more than hail Attorney Morse when he was in the detention center on other business.  *See* ECF No. 137 at PageID #: 1735–36 (explaining that Petitioner asked to see if Officer Kordic "could fit him in because [Petitioner] wasn't on the schedule" to see Attorney Morse).  Attorney Morse also testified that Petitioner "was aware of his ability to contact Attorney Morse [and] had done so many times in the past."[7]  ECF No. 137 at PageID #: 1767.  At sentencing, Defendant could have informed the Court about those intentions as well.  *See* ECF No. 109; ECF No. 137 at PageID ##: 1774–75.  Petitioner has shown his ability to communicate directly with the Court

---

[6]  *See* Def.'s Ex. H, ECF No. 138-2 (charting certain attorney-detainee visits and calls).

[7]  While Officer Kordic recalled that Petitioner wanted to see Attorney Morse about an appeal, Officer Kordic did not testify that Petitioner asked him to arrange a time to speak directly with Attorney Morse.  *Cf.* ECF No. 137 at PageID #: 1743.

(1:24CV1242/1:20CR815)

and to appeal *pro se*. *See, e.g.*, ECF No. 97, Notice of Appeal.[8]  Yet he did not draw to the

attention of *any court* Attorney Morse's alleged failure to file an appeal until nearly a year after

he had been sentenced.

Despite his ample opportunities to do so, the Court finds by a preponderance of evidence,

that Petitioner did not make clear that he wanted to appeal.  Additionally, given the

circumstances, including the discussions Petitioner and Attorney Morse had about appellate

rights and Petitioner's success at trial, Attorney Morse was not constitutionally bound to consult

further with Petitioner about an appeal.

C.  No Prejudice

The prejudice prong requires a showing by Petitioner that "but for counsel's deficient

failure to consult with him about an appeal, he would have timely appealed."  *Johnson*, 364 F.

App'x at 977 (citing *Flores-Ortega*, 528 U.S. at 484).  The question is whether Petitioner "would

have" appealed, not whether the appeal would have had merit.  *Id.*

The record belies Petitioner's claim that Attorney Morse's performance was deficient or

that Petitioner would have appealed but for counsel's deficiency.  First, the record makes clear

that Petitioner was aware of his ability to act for himself and he frequently did.  For example,

after being sentenced, Petitioner filed a *pro se* motion for transcripts on November 18, 2023 and,

subsequently filed a *pro se* appeal of the denial of that motion on January 29, 2024.  ECF No. 93.

*See also* Notice of Appeal, ECF No. 97 *and* Acknowledgment [non-document] dated

01/31/2024.  Next, even if Officer Kordic's or a family member's message had reached Attorney

---

[8]  In this appeal, Petitioner complained that he should have been given a free transcript of his sentencing hearing and nothing else.  He did not mention the absence of an appeal.  ECF No. 93.

10

(1:24CV1242/1:20CR815)

Morse, there is nothing other than Petitioner's unsubstantiated word that he would have appealed.  Finally, it was not until nearly a year after being sentenced that Petitioner moved to vacate his sentence.  *See Cross v. United States*, 73 F. App'x 864, 866 (6th Cir. 2003) (finding against the petitioner in part because he failed to move to vacate until eight months after sentencing).

Ultimately, because Petitioner failed to satisfy *Strickland*'s performance prong, prejudice need not be addressed.  That said, Petitioner fails the prejudice prong, too.  The Court finds, by a preponderance of the evidence, that Petitioner would not have appealed; accordingly, there was no prejudice.

### IV.    Conclusion

For the reasons above, Petitioner's Motion to Vacate (ECF No. 98) is denied.


IT IS SO ORDERED.


September 5, 2025                                              */s/ Benita Y. Pearson*
Date                                                                   Benita Y. Pearson
                                                                           United States District Judge

11